Good morning. My name is Sarah Wright and I represent the appellants Michael Meyer and Patricia Zerlup. I'd like to reserve five minutes of my time for a rebuttal. The issue before the court is whether nurses Patty Zerlup and Mike Meyer are the original sources of their QI-TAM complaint. According to the Faults Claims Act, an original source is someone with direct and independent knowledge of the information on which the allegations are based and has voluntarily provided that information to the government before filing the QI-TAM action. In Rockwell v. United States, the Supreme Court explained that the phrase, information on which the allegations are based, relates to the allegations of the QI-TAM action. And what's interesting about Rockwell and how it relates to this case is that if the sole relator remaining in this case was Vicki Weatherford and not nurses Patty Zerlup and Mike Meyer, then Vicki Weatherford would be in trouble. Vicki Weatherford would not be an original source of the information in the Third Amendment complaint. But that's not the case here. The case here is that the remaining relators are the individuals with direct and independent knowledge of the specific allegations of the Third Amendment complaint. And particularly with respect to Patty Zerlup, Patty Zerlup's name is on the exhibits to the Third Amendment complaint. Patty Zerlup is the nurse who treated the patient for whom false claims were submitted. Patty Zerlup's handwriting is in the group therapy notes. One of the problems that I see is when Nurse Weatherford left the case, what you have for an original source before Nurse Weatherford brought her action, at best is a meeting between, an alleged meeting between these two nurses, and I don't remember if Miss Weatherford was in on that or not, with some person from the government. And we don't know what was said and what was disclosed and whether or not it was in the nature of a public disclosure, such as the Weatherford lawsuit we know was a public disclosure. So that's the weakness that I see, which you have in your case that ends up where the proponents argue the disclosure was made in the Weatherford suit and that was a public disclosure. And that's the difficult part that I have. I don't have any problem if I could say that the Third Amendment complaint was sufficient, you know, as a pleading matter under Rule 9. But that is where I fall down and where your opponents really hit you in that area now. That's what I'd like to hear about. Okay. If I might just clarify, Vicki Weatherford is a Ph.D. psychologist. She was the director of the Senior Bridges geropsychiatric program. Can I call her a nurse? I can't. I know she was a high level person. And she was a daytime worker. Patty Zerlup and Mike Meyer were nurses who treated the patients on the unit. And the information in Dr. Weatherford's wrongful termination complaint was obtained through the nurses. And, in fact, the complaint states that the nurses reported certain things to her. Because Dr. Weatherford was not a – Her suit was constructive termination of her employment because she was attempting to – and she successfully foiled the scheme to admit the patients who could not benefit from treatment on the unit. Now, in response to your question about the meetings with the United States prior to the public disclosure, I have to say your Honor raises a very valid point, and that is that in the declaration submitted in opposition to the 12B1 motion, I did not provide a lot of that information. And that is because the U.S. attorneys had sought to protect a lot of that information. Well, let me get one thing clear about this. There's a lot of argument about whether the declarations of September – I think it is 17th or 19th or whenever – were accepted. I gather those were excluded by the court. But there's not much talk about the declarations of September 12th, which are in the record. And it may well be different. I don't know what was in the later declarations because they're not in the record. But in the – is it your contention that the earlier declarations are sufficient to show that the government was provided with the necessary information by your client before there was any public disclosure? Yes, your Honor. And without citing specifically what documents were given to the United States, because the U.S. attorneys back then – and this case is 10 years old – had indicated to me that they – They were better than the petitioner in our first case. My clients are free. They're walking around and they're – yes, that's true. But the United States had indicated that they wanted to protect some of that information, that they considered it work product. And in fact, they did not approve of my releasing the disclosure statement. That's never been released because the United States considered it work product. So – and what I try to convey – I understand. Whose work product? The United States thought I should raise work product issues. This is a conversation that I had – I don't understand. Whose work product? Well, in 1999-2000, when I was working fairly closely with the U.S. Attorney's Office, they were advising me to – that the disclosure statement that I produced and provided to them was work product. Whose work product? Mine. But since we were on the same side, I needed that advice and felt that I should be cautious in releasing information. Well, couldn't you file it under seal? I did. Then I don't understand what you're talking about. Well, the documents that were provided to the government supported the disclosure statement. There were two pounds of documents, two pounds of paper. And that's what I'm trying to get at in closing the FedEx label. If you look at ER 86, you can see there's two pounds of paper that the United States sent back to me on July 7th of 99, which was a full three months before Dr. Weatherford filed her constructive termination claim. Do you still have those papers? I do. And, in fact, I produced them in the discovery later. I just didn't produce the – Later? What do you mean? I produced them in the discovery in this action, in the QTAM action. I did not produce the disclosure statement, but I produced the documents I had given Dr. Lack. How much of this is disclosed in your third amended complaint in terms of showing the original sources in the complaint? Well, in the third amended complaint, what we have attached to the complaint are the billing and medical records of patient A. We've identified by that name, because she is a – even though she's deceased now, she was a psychiatric patient. She has a right to privacy, so that's why we used that designation. But at ER 77 and 78, we have nurse Zuerlup's handwritten notes reflecting that she treated the patient on the dates set forth on those documents. And those are called group therapy daily progress notes. There's a therapist's signature, P. Zuerlup, on the right-hand side at the top, and it just identifies nurse Zuerlup's observation of the patient. You're talking about patient – let me put something in context to you. If you had appealed, your second amended complaint, when Ms. Weinberg was still with you, it had been a different case than what you've got, which you, as I understand the rule, once it was dismissed, you didn't preserve your rights, and now you've got a third amended complaint. One of the things that I have in my mind is that you claim that when your two clients went to the government, you had – you purged the government of the information on patient A. Is that right? But you don't have that information. Well, what we didn't have were the full medical and billing records. And another thing that's really fascinating about this scenario is that this is the perfect scheme for Medicare fraud. You have patients who are in a psychiatric unit. So an argument can be made, these people really, you know, they can't testify about any of this. And they're very elderly. They're near the end of their lives. By the time you get into litigation, most of them are dead. You have health care providers who see what's happening with the patients and know that they can't treat, they can't benefit from the treatment on the unit. But those health care providers don't produce the bills themselves. So when you get to court on a key TAM action, the judge says, we're not going to let you go forward unless you give us the actual bills. Well, I think you're jibbing me, Ron, but that's not material. Because what you've got now is a Third Amendment complaint. And what I'm starting out with saying is, you know, you haven't answered the story about the public disclosure. And we don't know anything about it. And as far as the record concerns, it's concerned, it looks to me like the first disclosure was it wasn't for Lawson. So you're okay as long as she was in the case. Well, actually, in Rockwell, the court says that when you disclose a prediction, a prediction or a plan, for example, in Stone. Well, let me ask you, is your position that if you have given the government the information and disclosed the fraud to the government, that it doesn't matter whether there's a subsequent public disclosure by someone else? Well, under Rockwell, as long as my clients are the original sources of their own allegations, it doesn't matter. And I think Rockwell is very clear on that. And none of the claims were made during Weatherford's tenure. Okay. So I'm just trying to find out your answer to Judge Breit's question. Under your theory, you don't have to be the source of Weatherford's information. You don't have to be. My clients were, but you don't have to be. Okay. So your first theory is you made a disclosure to the government, and that satisfies the statute. That satisfies that element of the statute that says that you have to have disclosed, yes. Okay. Your second theory is that even if you have to be the source of a public disclosure, if the Weatherford disclosure was a public disclosure, you were the source of her information? My clients were the source of her information, yes. Okay. They were the traitors. Now the question is, to what extent is that pled either in the complaint or the affidavit? Essentially, your theory, as I understand this, is it sufficient to have it in the affidavit? You can look beyond the complaint when the type of motion the defendants made is at issue. Okay. Now, then in the affidavit of the 12th, which isn't the record, there are exhibits to the affidavit, which I don't find in the excerpt of the record, not surprisingly. But you show that you sent Mr. Lack materials, or he took materials. And so you have those materials, but they're not attached as exhibits. It's two pounds worth of documents. And you could show you disclosed to the government all of the information that's necessary to satisfy the requirement that you have disclosed this information to the government. We could show that. If you attach the two pounds of materials. And also, you know, the fact that the ER-101, the exhibit to Patty Zuerlup's declaration of 9-12-06, is dated May 6th, and that reports to Summit the problems that she identified. There's no question that she is a source of this information. And I apologize to the Court, but I'm over my time limit here. But as far as furthering the policy of the statute, the barriers that have been erected, I think one thing that Rockwell did is try to strike down some of these artificial barriers to bringing forth these claims, because these are claims that individuals need to be able to bring. They're the only sources. They're acting in partnership as good citizens when they do bring these claims. And I'm out for that, but I've got to ask you again. Under the statute, Section 3730b-1, the act applies, no court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing and so forth. And my basic question goes back to the first meeting with the government people, and I don't see how you can make that up as a public disclosure. That's a report, but that's not a public disclosure. I understand. As I see it. And unless you can show me that, I'm afraid I can't vote with you. Well, but even if the public disclosure is Dr. Weatherford's complaint, Rockwell says that as long as you're a source of the allegations of your QTAM complaint, you don't have to be a source of the allegations of the prior public disclosure. Is it a prior public disclosure, or are you arguing it's a subsequent public disclosure? Well, I mean, our argument was that it was a subsequent public disclosure, but for purposes of answering this question, if you accept that, if you accept that Weatherford's complaint was a prior public disclosure, then you move on to Rockwell's analysis of what is required in order to meet the original source requirement. And under Rockwell, you only have to be a source of the allegations of your QTAM complaint. So we look at the original source of the allegations of your QTAM complaint. Stretching a long way, but maybe you're right. Okay. I am out of time, but we'll give you a couple of minutes to rebuttal. Thank you, Your Honor. May it please the Court. I'm Greg Luce. I'm counsel for Summit Medical Center. I'm here today to speak on behalf of all defendants subject to any questions the Court may have for individual counsel who are present. We come before the Court on a motion that succeeded in dismissing a case on jurisdictional grounds. And we have heard this morning new facts and argument that is not either in the pleadings or in the briefs from counsel for the relators. So, frankly, I'm a bit confused. I believe I understood counsel to say that were Dr. Weatherford the only remaining relator, that she would not be an original source. I'm confused by this because Dr. Weatherford was still in this case when the third amended complaint was filed. Dr. Weatherford made, as you have noted, Judge Wright, the public disclosure. That's at issue here, the kind of public disclosure this statute does. Let me start with the first theory. The first theory is that if you disclose to the government, that satisfies the statute. And if there's never a public disclosure or if there's a subsequent public disclosure, that's irrelevant. Do you agree or disagree with that? I agree that a subsequent public disclosure after the filing of the QI-TAM would be irrelevant. No, no, not after the filing of the QI-TAM. Case ticked the case. The nurses go to the government and they say, here is a corrupt, horrible scheme. They're killing people at the hospital. Then they're billing the government. And we want you to do something to stop this. The government doesn't do anything to stop it, so they file a QI-TAM action. Does it matter whether there's a subsequent public disclosure after they've gone to the government and revealed this horrendous scheme? It most certainly does, Your Honor. Because, first, that going to the government is an obligation that exists if there to be an original source. It may be an independent pursuit as a good citizen. But the type of public disclosure that the statute contemplates is exactly as Judge Wright read from the statute. You mean that after they go to the government and say, here is a terrible thing. We want you to do something about it. If the government fails to do it, then they've got to hold a press conference or do something to bring this to the public attention before they can file a suit. Well, Your Honor, I'm not quite sure I filed a press conference, but this... Oh, if they file a lawsuit themselves. If they file a lawsuit, it can't be a QI-TAM lawsuit, you say, because there has to be a public disclosure in addition to telling the government. What is it they have to do after telling the government about this scheme? Going to the government is not itself an obligation of filing a QI-TAM unless... It's an obligation. I said they go to the government. Somebody goes to the government and says, here is this horrendous fraud that's depriving the people of all the money. That's why we're having this market crash. Someone goes and tells that to the government. What else does he have to do before filing a QI-TAM suit when the government fails to do anything? If they've gone to the government with this, they can still file the QI-TAM. They have to file it under seal. They have to provide to the government all the information available to them at the time. Let me ask you, so there is no public disclosure requirement? There is no requirement that there be a public disclosure. The public disclosure is a bar to jurisdiction for any person who fails to meet the requirements of original... So their first theory then is that they came and they gave two pounds of paper to the government, and the government returned it to them. Why doesn't that meet the requirements? It is neither here nor there for determining this court's jurisdiction as to whether or not they gave that information to the government in the absence of a public disclosure. I don't understand. You just said there's no requirement for public disclosure. No, Your Honor. I did. I agree. Why are you saying there is now? There is not a... Then why doesn't his example qualify as meeting the act? Because there's not enough facts, Your Honor. Assume that the two pounds of documents shows the fraud. Assuming even that the two pounds of documents shows the fraud, the submission of that information to the United States Attorney's Office, or in this case the Inspector General, is, first of all, not a public disclosure. It's just giving government information. There must be a public disclosure. There must be. No, but where there has been a public disclosure, as there was here... No, public disclosure is after they gave them the documents, right? No, Your Honor. No. I'm sorry. Yes, Your Honor. The public disclosure here occurred after the government's alleged receipt of these documents. So then why isn't that totally irrelevant, the public disclosure? You said there's no requirement. You go to the government, you expose the fraud, you give them the proof, and the government does nothing. Well, then there's a subsequent public disclosure, which there doesn't have to be. So what? But that's not the sequence of this case, Your Honor. The sequence of this case is that they gave some information to the government, they filed a public disclosure-type lawsuit. Okay, that's the sequence. It doesn't matter whether they did or not under your theory or your explanation, under their theory and your explanation, you see. I mean, I'm just trying to understand this. I'm not trying to, you know... Your Honor, if Dr. Perhaps this would help. If Dr. Weatherford had not filed her private state action for employment... I understand that it was filed before they went to the government. Yes, Your Honor. If it's filed before there's a public disclosure, and then you've got to show you the original source. But if you've gone to the government first, and then there's a subsequent suit by somebody, that seems to me it's irrelevant. No, it's not, Your Honor. In fact, this circuit, every circuit's cases hold uniformly that going first to the government, going first to the press, is the public disclosure. The problem with the case here, Your Honor, is that the statute says no court shall have jurisdiction for a Keith Ham suit filed after a public disclosure if the suit's based upon the public disclosure and they're not an original suit, but they clearly are. No, no. The public disclosure is based upon the same document that the suit is based on. No, Your Honor. Well, yes, Your Honor. In this case, the public disclosure. Documents. There are two kinds of documents. No, Your Honor. It's clearly not. Why not? Because first, the documents haven't been introduced. We don't know what they are. How is it clearly not if you don't know what it is? Because it is the burden of the plaintiff's court. Okay, but you can't say it's clearly not if you don't know what you're talking about. Well, Your Honor... You can't say it's clearly not based on them when you don't even know what they are. Well, I think I can, Your Honor, because since we don't know what they are... If you say it's clearly not based on X and I don't know what X is. Your Honor, when Dr. Weatherford filed her suit, she was represented by the same lawyer that continues to represent the relators here. She filed her private suit in October of 1999, identifying essentially the scheme and allegations of the fraud. That was the public disclosure. For them to continue... Well, if they had given the documents to the government and then they based the subsequent suit on those documents, you're saying, well, the presentation to the government based on the suit. As Judge Hashima said, maybe the suit is based on the documents that were presented to the government. Which is why we have the original source rule, because we know that there was a public disclosure. So if they can demonstrate that they were the original source of the information that was the public disclosure, then they can survive this jurisdictional bar. But you told us earlier, it seems to me, that if they meet the statute requirements by going to the statutory requirements, by going to the government and giving them that information, and it doesn't matter whether there's a subsequent public disclosure, that after they do that, they can wreck town hall, make speeches. They can do whatever they want if they've satisfied the statutory requirements already. That's not the statutory requirement, Your Honor. Mr. Lewis, let me put forth a hypothesis. I'm trying to understand your position. Tell me if I'm setting forth your position correctly. Now, a KTAM plaintiff has a burden of showing that he or she is the original source of the allegation. Is that true? Only where there's been a public disclosure. All right. And in this case, there's been a public disclosure by the Weatherford suit. Yes, Your Honor. Now, whether that's before or after, you know, they gave the documents to the government. Let's say they gave the documents to the government before. These two pounds of documents, right? Because there's been a public disclosure, they have to show, they meaning the relators, that they were the source of what was disclosed. Is that right? Is that what you're saying? Or do they have to, do they have the burden of showing that the documents we gave the government set forth, you know, this scheme and that was done before there was public disclosure? Is that enough that they show that? They have to show under the statute, Your Honor, that they had direct and independent information. Right. And that they gave that to the government. So they might meet the gave it to the government requirement. Then the test would be whether or not. You said they have to show it. They have to show it how and when. They must plead it or when questioned, as was questioned here in this motion, they must produce sufficient information to invoke the jurisdiction of the court in the view of the statute. They have to plead it, in this case, in the third amended complaint? The third amended complaint would be the pleading to test whether or not they were original sources under the Rockwell rule. And if the complaint doesn't disclose that they're the original source, can they show it by filing a declaration on September 12th, you say? Yes, Your Honor. I believe that they can. All right. On its face. The declaration in this case and the complaint taken together are not sufficient to show one that they're the original source? I am, Your Honor. Taken together, the third amended complaint does not demonstrate any direct and independent knowledge and information. Plus the declaration. The declaration is also a matter of record. Yes, Your Honor. And considering the face of the declaration, it fails to specify. Here's the way I would suggest that the court look at it. They went to the government with information. This Court has held in a number of cases that that might demonstrate that they had independent knowledge. But they must still show that there was direct knowledge. And they fail on that for these reasons. First of all, only the relator Weatherford was in a management position, as she has alleged, to understand. Direct knowledge is just another way of saying original source, right? I'm sorry. I missed the first part. Direct knowledge is just another way of saying that you're the original source. It's one of the three tests of original source. It must be direct. It must also be independent. This Court has found that there's a difference. You're saying all these disclosures taken together, the complaint and the declaration, are not sufficient to show that they had direct knowledge or otherwise were the original source? Yes, Your Honor. They take great pains to point out they don't know how the bills work. They can't attest that they were in. What's lacking in the showing original source? What's lacking in their demonstration of direct information is that, first, we know they didn't have the patient aid billing records. They went and got them at the instruction of the district court after the second amended complaint was dismissed. We know that they did not have any detailed information about billing because they say it repeatedly in every pleading that they have filed and even in argument here today. They don't have the knowledge of the fraud. They have maybe some elements, but they also seem to rely upon one another. They relied on Dr. Weatherford to understand the application of Medicare rules to the operation of the unit. They rely on Ms. Zirlip apparently for certain patient records, and Mr. Myers is not involved at all in terms of understanding. Do you get all this from the declaration? I do, Your Honor, and from the pleadings. I've been reading them for almost 10 years now, and it is very clear from their pleadings that they don't know the billing. It is very clear from their pleadings that the only billing they got, they got five years later. Now, suppose Ms. Wright were to stand up, I think as she has, and say, well, all these two pounds of documents show all that. If the two pounds of documents, Your Honor, are what Ms. Wright has described, as I understand it, this morning, they consist of patient medical records and face sheets that they have described in the complaint. What they don't show, and I believe that they have made clear in all of their pleadings for all these years, is that they don't know whether or not an actual claim was submitted to Medicare. They have made no allegation of any specific Medicare regulation that would prohibit the submission of the claim. They do not have that direct knowledge of the fraud. And until the third amended complaint with patient A, they had no claims. Mr. Lewis, the way you use the term direct knowledge of the fraud, I think it's almost limited to the person who participated in the fraud. A nonparticipant would never have direct knowledge. Is that the way you construe it? Many of the courts have held basically that, that one must be an insider, must have understanding of the entire workings of it. They may or may not have been a participant. Even had they been a participant, that alone would not disqualify them. Well, for instance, you know, say somebody like, well, say the inspector general of the department can't be an original source because he didn't participate in the fraud. Is that right? There's probably a number of facts to go. A number of internal audits, as Your Honor knows, have been held to not qualify where the work was performed and it wasn't voluntarily provided to the government following a public disclosure because it was a compulsory element of the obligation of their job. And so we see this throughout, that all of the elements of the original source rule must be met once there's been a public disclosure. Well, the problem is, here's the way, if we assume the following. They went to the government and they said, this is going on, and they're putting patients who shouldn't be in this care, and they're putting them in there, and we know that under Medicare, by putting them into this area, they're going to get more money. Now, there's no way they can get the bills. There's no way that they can find out whether or not that there is an actual fraud. But aren't the ear markings there, and isn't that enough of an indication of fraud to say a disclosure was made? That's my question. If the disclosure is the element of the original source rule that says you must go to the government with your information, we never contended they did not meet that. So if that was in there, that would be there. But it would not be the type of public disclosure that creates the jurisdictional ban under the statute. This is what I'm having trouble understanding, because I think you've given inconsistent answers. I understood one of your answers to be that if they go to the government before there's a public disclosure, it doesn't matter. There never has to be a public disclosure. Is that right or wrong? Your Honor, if I answered that way, I misunderstood your question. If there's not been a public disclosure before they file their QI-TAM. Before they go to the government. They go to the government, and they tell the government everything. Does there then have to be a public disclosure after that? No, Your Honor. They can go ahead and file a QI-TAM. Okay. So then let's stop with that, because that seems to be the facts. That they went to the government before. What was the date that the suit was filed? The other Weatherford suit. October of 99. Okay. They went to the government on September 12th at least. By the affidavits of September 12th described when they went to the government. Is that not before the Weatherford suit was filed? Yes, Your Honor, it is. It is. The Weatherford suit was filed in October of 99. And before that they had gone to the government, they claim. Yes, Your Honor. But that alone, that would only, that would preserve their right to bring a QI-TAM. Yes. After the Weatherford case, if they can meet the original source rule. When did the? Because the secret. Well, I suppose there had been no lawsuit by Weatherford. What would they have had to do? I'm sorry, what if? There had been no lawsuit by Weatherford at all. Then when they filed on April of 2000 their QI-TAM, and there had been no public disclosure such as the Weatherford case, all they had to do was go to the government. But they had gone to the government before the Weatherford case. Well, Your Honor, that wouldn't suffice to make them A, the 3729, B related. They have to. Whatever they are, let's say they were. Get the information. If the Weatherford suit had never been filed. They would have had to file it under seal. That's all they would have had to do. Under seal, I'm sure. They would have had to file a QI-TAM, Your Honor. No, they filed a QI-TAM. And you say that because the Weatherford suit was filed after they went to the government, they then have to do more. I mean, somebody, Joe Smith, goes and files a suit after you've gone to the government with this information. Okay. Now, how does that change your burden? What do you have to do that you wouldn't have had to do if Joe Smith hadn't decided to go and file a suit? This Court has held that if at the time the QI-TAM complaint has filed, there's been a public disclosure. That's not the case. Yes, it is the case, Your Honor, with all due respect. The suit was filed. Judge Reinhardt's hypothetical is that the suit was filed before. I've lost which suit was filed, Your Honor. Well, let's start with the simplest example. You go to the government. You say, here is this terrible scheme. Here is all the information. You write it all down. You do it in the form of a QI-TAM complaint. Say, here it all is. Here's a complaint. Will you go along with this? Okay. Then the next day or a month later, some other person you've never heard of before files a lawsuit that has some of your allegations in it. Does that change what you have to do when you file a QI-TAM suit? If in the hypothetical I went to the government and filed my QI-TAM? That's not what I said. So we gave them a draft QI-TAM, went to the government. Join with us in this lawsuit. We're going to file it in a week. Then the answer to that is that although there's been this intervening suit, not by me, for me to demonstrate that I can bring my QI-TAM, I would have to both go to the government with my information, which maybe I've done, so I satisfied that. You went to the government. So I've done that. I now have to show that I had direct and independent information regarding the allegations or the transactions, and then I would be the original source under that hypothetical, so I could proceed with a QI-TAM. Isn't it enough to prove you were the original source, that you went first? No, Your Honor, it is not. There are three very clear requirements in the statute, and they're jurisdictional. So where there's been that public disclosure, I have to show to be the original source that I have direct and independent information about the allegations or the transactions, and that I have voluntarily provided the information I had to the government. And if Weatherford had never filed a suit, what would you have not had to prove? If Weatherford had never filed a suit and there had been no public disclosure, I wouldn't have to show any original source jurisdiction. The court would have had QI-TAM jurisdiction for my case brought as a relator. So what you seem to be saying is your understanding of the rule is that if there's a public disclosure, almost regardless of the time, as to when the public disclosure is made, the False Claims Act introduces a new requirement on the relator with respect to that public disclosure. Regardless of whether or not your suit is filed before the public disclosure or not, you still have to show you mean the relator that you're an original source if there's a public disclosure. Is that right? Public disclosure would be a circumstance raising that obligation. Well, just assuming there's public disclosure, right? I mean, that raises a new obligation on the relator, namely, to show you're an original source. In order to bring that suit, if the QI-TAM followed the public disclosure. Does public disclosure mean more than a lawsuit? Is a press conference enough for a public disclosure? I think almost certainly not, Your Honor. What is a public disclosure? A public disclosure under the statute refers to the type of information from a congressional hearing, a criminal indictment, a general administrative office's investigation, or a news article. Those are the identified statutory provisions of what's a public disclosure. If, in this case, everyone in the United States that participated in an investigation could claim that they gave information to an ongoing investigation, so therefore they made a public disclosure, the rule would have no meaning. No government investigation would do other than simply create an unlimited pool of QI-TAM relators. Your Honor, you have been very generous with my time. I'm happy to answer questions as long as you wish. I'm substantially in excess of that. Well, it's been very interesting. Thank you. Thank you. Thank you. Do you need a minute or two for rebuttal or not? Mr. Ciavalli, are you planning on? To clarify slightly, what I would, to gloss I would add to the lively discussion just now, is that the QI-TAM is a statutory scheme to encourage whistleblowers, as we know. I think in the example given, first of all, I think it was the plaintiff's job to show what information was given to the government relative to the Third Amendment complaint alone, because that's where we are. But secondly, if the information goes to the government, there has been no public disclosure. When Weatherford filed the suit, even though the information had been given, this is now public. There's no whistleblowing effect. So now the requirement to meet the original disclosure originates. In your example, had the information been filed, Weatherford has never filed, they can go ahead with the QI-TAM once the 60 days goes. And in Judge Tashima's example, if the information is given to the government, the suit is filed under seal, the QI-TAM suit, and then later there's somebody, the Weatherford suit, again the QI-TAM can proceed. Here we have the information, then the public disclosure before the QI-TAM, adding grass to the key to the requirements. Your co-counsel just told us that if there's a newspaper article, that's a public disclosure. That is a public disclosure. So that if the company knows you've gone to the government. The company what, I'm sorry? Knows you've gone to the government. Right. Given that information. All they have to do is say to the newspaper, by the way, someone's accused us of this. And then that poses a burden on the plaintiffs. Because you are no longer in essence a whistleblower bringing to the public something that has been kept secret. That is the framework under which the QI-TAM statute is engrafted. And I would add, and I think this is critical since we are talking about a jurisdictional requirement, when we speak generally about what was disclosed in the two-pound package, it was the plaintiff's obligation with respect to the third amended complaint to show that that requirement was met with respect to patient A, who is the only patient left since the second amended complaint was not appealed. And so once the Weatherford site, once the Weatherford action was filed, it became public. It didn't eliminate the QI-TAM but engrafted the additional requirements. Yes, Judge Bright. Well, in other words, you are saying they have to establish in their third amended complaint that they brought to the government the essentials of the fraud of the original source of information about the person number A. Right. And that is lacking. And there is nothing as to Meyer, as to Serzlick. Yes, there are some notes that have been signed, but much of what is said is simply discussion of what Graywall may have said, of what other documents may have said. I understand. Okay. I'm sorry. I'm not sure you can hear me. I understand what you're saying. Okay. And so my point was that we sort of lost here. I hope we haven't lost the necessity for specific allegations by the plaintiff to establish the jurisdiction prerequisites. That's all I wish to add. And I do appreciate the time the Court has given. Well, it's a statute. Not going to let me off that easy, huh? No, no. I was just going to say there are some things that don't make a lot of sense about this statute, including the fact that you're okay to file a suit until you can frustrate it by making it. Well, you don't frustrate the suit. The key time can still be filed. It can. Oh, yes. The public disclosure only engrafts the. . . No, you impose additional burdensome requirements on them. Well, because it's now a public information. You are no longer a whistleblower. Because the company can do it. I suppose they could. But I want to mention that in the process of amending the key term statute now with the new Congress and the new president, and they're making substantial revisions based on court decisions. So maybe if we got this out the way you would like us to, we can give them another thing to amend. I'm sure there may be many amendments coming. All right, but thank you very much for helping us to understand. And, again, we appreciate the court's time. Thank you. Thank you. Okay, do you want to take two minutes to tell us, do you agree with the explanation the counsel gave that although you might not have had the obligation to prove that you're an independent source, an original source, if Ms. Weatherford hadn't filed her suit, once she did, your obligations changed, and you now have to show us because it's no longer exposing something. Ms. Weatherford exposed it for you. Well, I disagree factually that Dr. Weatherford exposed the specifics of the fraud because they hadn't occurred. What Dr. Weatherford claimed in her wrongful termination claim was they constructively terminated me because I opposed admissions that were improper. So none of those had happened during her tenure as program director. And if you look at her complaint or you look at the deposition testimony that Summit submitted, that she --. And whether Dr. Weatherford's suit constituted a public disclosure of the fraud. If it was a public disclosure, if the court were to make that determination, then Rockwell governs. And at 127 Supreme Court 1407, I'm answering Justice Bright's question now. Judge Bright. Excuse me? I might not consider it, but I think I'm a little bit old. Okay. Well, in answering his question, the court said, does the phrase information on which the allegations are based refer to the information on which the relator's allegations are based or the information on which the publicly disclosed allegations are based? And that's the key. And the court said to prove you're an original source, you have to have direct and independent information of the information upon which the relator's allegations are based. That's why Patti Zuerlup meets original source status as to --. Relator is a plaintiff. Okay. Because the complaint is brought in the name of the United States, the term relator is used. Patti Zuerlup, you say, is the original and independent source. Of the information with respect to patient A, there is a reference to 49 other patients. Mike Meyer has independent and direct knowledge of the treatment of those patients. But with respect to the exhibits to the Third Amendment complaint and the specific allegations about that particular patient, that would be Patti Zuerlup. And the exhibits to the complaint show those things? Yes, they do. The exhibits show because Patti Zuerlup had independent knowledge of the treatment of the patient. Are the exhibits to the complaint or to the affidavit? To the Third Amendment complaint. They're exhibits to the Third Amendment complaint. We don't have to go to this new material you sent? No, Your Honor. All right. They're ER 77 and 78. What's that again? ER 77 and 78. All right. One second. I just had those. I have no more questions. Okay. Well, this is about film and popcorn. This shows that Patti Zuerlup treated this patient, that she has direct and independent knowledge, that this patient was unable to benefit from treatment on the unit. This is a patient who was unable to participate, suffered by being there because she should have been on a medical surgical unit. While she was there, she lost her second leg. All right. That's enough for the moment. Thank you. And the other place that you can find this in the record, that Patti Zuerlup was an early whistleblower, is ER 101. And that's attached to the declaration that was timely submitted. And the last paragraph of that letter, or resignation to summit, really speaks volumes, because she talks about what happened after Dr. Weatherford left.  I came to realize that Dr. Weatherford had protected me and other nurses from bearing the brunt of Dr. Graywell's unethical, fraudulent, and illegal practices. That definitely shows that Patti Zuerlup had knowledge of these practices May 6, 99, and she did her best to bring it to the attention of her employer, and she resigned rather than be a part of those practices. Well, thank you. I think we've learned a lot from the argument. Thank you all very much. Thank you. The case just argued will be submitted.
judges: Reinhardt, Tashima, Bright